UNITED STATES of America, Plaintiff–Appellee,

v.

Juan CHAPA–GARZA, Jr., Defendant–Appellant.

No. 95–50155
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Aug. 15, 1995.

"movables" are not compensable under Louisiana expropriation law).

James H. DeAtley, Austin, TX, Richard L. Durbin, Jr, Asst. U.S. Atty., Office of the U.S. Atty., San Antonio, TX, for plaintiff-appellee.

Alan N. Brown, John Aloysius Convery, San Antonio, TX, for defendant-appellant.

Before THORNBERRY, JOLLY and BENAVIDES, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellant Juan Chapa–Garza, Jr., appeals his conviction for escape from federal custody, and his sentence of fifty-seven months. We affirm.

## I. Background

Chapa–Garza was serving two concurrent fourteen year sentences for conspiracy to distribute marijuana and engaging in a continuing criminal enterprise when he absconded from federal custody. He and two other inmates, Charles Compton and Mario Salinas, escaped from the Wackenhut Correctional Corporation Facility in San Antonio, Texas, after a handgun was smuggled to Salinas in some legal papers. Chapa–Garza's primary role in the offense appears to have been helping to confine the correctional officers whose cooperation Compton had compelled by holding the gun to their heads. Chapa–Garza remained a fugitive for four and one-half years before being apprehended and deported to the United States by the Mexican government. He brings three challenges to his conviction and sentence: the district court should have held a hearing on his motion to dismiss the indictment; statements he gave while in custody were involuntary, and; the district court should have awarded him an adjustment to his sentence for acceptance of responsibility.

## II. Analysis

### A. Hearing on Motion to Dismiss

Chapa–Garza first contends the district court erred in denying him a hearing on his motion to dismiss the indictment because of outrageous government conduct in causing him to be abducted and deported during pendency of extradition proceedings. After Chapa–Garza had made his escape he lived primarily in Mexico. Extradition proceedings were initiated by the U.S. Attorney's Office, and a warrant was issued for his arrest. Chapa–Garza petitioned the Mexican government for an Amparo, which would abate the arrest warrant. Although the Amparo was issued pending extradition proceedings and determination of his identity and citizenship, Chapa–Garza was arrested by Mexican agents acting under the erroneous belief that he was another fugitive. Mexican authorities, after finding he was an American citizen, deported him to the United States.

Chapa–Garza in his motion to dismiss alleged he had been abducted from Mexico in violation of the extradition treaty between the United States and Mexico. He asserts the provisions of the treaty are rendered meaningless if the United States government is permitted to ignore traditional extradition procedures. Chapa–Garza contends the district court should have conducted a hearing to develop the record in order to determine whether he was a Mexican citizen and whether his abduction from Mexico was outrageous and denied him due process of law.

A criminal defendant abducted to the United States from a nation with which it has an extradition treaty does not acquire a defense to the jurisdiction of this country's courts. *United States v. Alvarez–Machain*, 504 U.S. 655, 112 S.Ct. 2188, 119 L.Ed.2d 441 (1992). The language of this country's treaty with Mexico does not support the proposition that abductions are prohibited outside its terms. *Id.*, 504 U.S. at 666, 112 S.Ct. at 2195, 119 L.Ed.2d at 453. Furthermore, the treaty only prohibits gaining a defendant's presence by means other than those set forth in the treaty when the nation from which the defendant was abducted objects. *Id.*, 504 U.S. at 667, 112 S.Ct. at 2195, 119 L.Ed.2d at 454.

Chapa–Garza argues this case is distinguishable from *Alvarez–Machain* because here extradition proceedings were pending at the time of his abduction. He cites *United States v. Rauscher*, 119 U.S. 407, 7 S.Ct. 234, 30 L.Ed. 425 (1886), for the proposition that the United States may not prosecute a defendant in violation of the terms of an extradition treaty. There was no treaty violation, and Chapa–Garza was not returned to the United States pursuant to the treaty. The fact that extradition proceedings had been

initiated against Chapa–Garza is irrelevant in view of the Supreme Court's holding that the extradition treaty does not govern the legality of forced abductions. *Alvarez–Machain,* 504 U.S. at 670, 112 S.Ct. at 2196, 119 L.Ed.2d at 456.

■ Furthermore, Chapa–Garza has failed to allege facts showing government conduct was so outrageous as to infringe his right to due process. He relies on *United States v. Toscanino,* 500 F.2d 267 (2d Cir.1974), in which the defendant was kidnapped, beaten and tortured by his captors, and his treatment so appalled the Second Circuit that it was held to give rise to a due process violation. *Id.* at 274–75. *Toscanino* has subsequently been limited to those situations involving torture, brutality, and similar outrageous conduct. *United States v. Wilson,* 732 F.2d 404, 411 (5th Cir.), *cert. denied,* 469 U.S. 1099, 105 S.Ct. 609, 83 L.Ed.2d 718 (1984). Chapa–Garza has not alleged the government engaged in conduct akin to that condemned in *Toscanino* and, therefore, the district court did not err in failing to hold a hearing. Moreover, since Mexico has not protested the alleged abduction, Chapa–Garza lacks standing to raise violation of the extradition treaty as a basis for challenging the district court's jurisdiction. *Alvarez–Machain,* 504 U.S. at 667, 112 S.Ct. at 2195, 119 L.Ed.2d at 454; *United States v. Zabaneh,* 837 F.2d 1249, 1261 (5th Cir.1988).

### B. Voluntariness of Statements

Chapa–Garza next asserts the district court should have granted his motion to suppress the confession because statements given to officers after his return to the United States were involuntary. After Chapa–Garza was apprehended by Mexican authorities he was turned over to the United States Marshals in Brownsville, Texas. He was then transported to San Antonio in a small DEA aircraft accompanied by Deputy U.S. Marshals Hogeland and Garza, and DEA Agent Belton. On the plane Hogeland administered *Miranda*[1] warnings to Chapa–Garza in English and then Garza gave him the warnings in Spanish. Chapa–Garza signed a form acknowledging that he understood these rights. However, although he agreed to speak with the officers regarding his escape, he refused to sign that portion of the form in which he waived his rights. He now claims that resulting statements given to officers were involuntary because of his refusal to sign the waiver.

■ The government bears the burden of showing that a defendant was informed of his *Miranda* rights and that his waiver of those rights and any resulting confession were voluntary. *United States v. Collins,* 40 F.3d 95, 98 (5th Cir.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 1986, 131 L.Ed.2d 873 (1995). Whether the defendant waived his rights is a fact question, and such a waiver may be direct or in some cases, clearly inferred from the defendant's words and actions. *Id.* at 98–99. Mere answering of questions is insufficient to show a waiver; there must be some affirmative act demonstrating a waiver of *Miranda* rights. *Id.* at 99.

■ On appeal from a district court's ruling after a hearing on a motion to suppress the confession, the appellate court, viewing the evidence in the light most favorable to the prevailing party, must accept the district court's findings unless clearly erroneous or influenced by an incorrect view of the law. *United States v. Laury,* 985 F.2d 1293, 1314–15 (5th Cir.1993). The reviewing court must take into account the totality of the circumstances surrounding the interrogation. *Id.* at 1315.

Chapa–Garza testified at the suppression hearing that he refused to sign the waiver because he did not wish to give up his rights. He thought he had preserved those rights by refusing to sign the form. Hogeland testified that he believed Chapa–Garza did not wish to sign because of the inconvenience of being handcuffed.[2] According to Hogeland,

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. The record reflects Chapa–Garza was "belly-chained" and handcuffed, making it difficult for him to sign the forms. His restraints included a "blackbox" which is used with maximum security escape risks. This device holds the handcuffs in a position which permits very little movement of the hands.

Chapa–Garza indicated with body language that he would talk about the escape but that he did not wish to sign the form. Garza testified that when he asked Chapa–Garza to sign the waiver, Chapa–Garza "nodded his head and moved his hands like, get that away from me." Garza interpreted this action to mean that Chapa–Garza did not want to be bothered by the waiver because he already knew his rights and Garza "was just being a nuisance." After Chapa–Garza refused to sign the waiver, officers asked whether he would talk about the escape, and he responded affirmatively. After that, according to Garza, the interrogation was cordial and conversational.

In denying the motion to suppress, the district court found that Chapa–Garza was properly warned and that he had waived his rights by speaking with the deputies. The court found credible officers' testimony that Chapa–Garza had refused to sign the form because of inconvenience and that the evidence did not show Chapa–Garza was coerced or under duress or that he failed to understand his rights.

 Although Chapa–Garza characterizes the custodial setting as "extreme," he does not contend that officers behaved in any overtly coercive manner. The mere refusal to sign a written waiver does not automatically render inadmissible all further statements made by the defendant. *United States v. McDaniel*, 463 F.2d 129, 135 (5th Cir.1972), *cert. denied*, 413 U.S. 919, 93 S.Ct. 3046, 37 L.Ed.2d 1041 (1973). *See also, Collins*, 40 F.3d at 99; *Laury*, 985 F.2d at 1315. Viewed in the light most favorable to the government, the district court's ruling that Chapa–Garza voluntarily waived his *Miranda* rights was not clearly erroneous.[3]

## C. Sentence

Chapa–Garza's final contention is that the district court should have granted his request for a two-level reduction in offense level for acceptance of responsibility. U.S.S.G. § 3E1.1. He asserts that he is entitled to the reduction because he cooperated with authorities at the time of his arrest, gave incriminating statements regarding the offense, and only chose to exercise his right to trial as a means of preserving error as to the propriety of the court's jurisdiction and the voluntariness of his confession. The probation officer did not recommend the adjustment because Chapa–Garza made no statement or explanation concerning his participation in the escape, and gave no indication of his willingness to accept responsibility for his criminal conduct.

U.S.S.G. § 3E1.1(a) authorizes the district court to decrease the offense level by two levels if "the defendant clearly demonstrates acceptance of responsibility for his offense[.]" The commentary accompanying § 3E1.1 states that conviction after a trial as opposed to a guilty plea does not automatically preclude consideration for the reduction, but in certain circumstances a defendant may qualify for the adjustment based on pre-trial statements and conduct. § 3E1.1, note 2. If a defendant "falsely denies or frivolously contests, relevant conduct that the court determines to be true [he] has acted in a manner inconsistent with acceptance of responsibility." § 3E1.1, note 1(a).

 Consistent with note 5 of § 3E1.1, we have agreed that because the sentencing judge is in a unique position to evaluate the defendant's acceptance of responsibility, the court's determination must be afforded great deference on review. *United States v. Franks*, 46 F.3d 402, 405 (5th Cir.1995). This Court has applied various standards of review of a district court's refusal to credit acceptance of responsibility: "clearly erroneous," "without foundation," and "great deference." *Id.* at 406. There appears to be no practical difference between these standards. *Ibid.* However, we have held the standard is even more deferential than a pure clearly erroneous standard. *United States v. Maldonado*, 42 F.3d 906, 913 (5th Cir.1995).

---

**3.** Even if this Court were to hold the district court erred in failing to suppress Chapa–Garza's statements, this error would have been rendered harmless by other evidence implicating him in the offense, namely eyewitness testimony positively identifying him as a participant in this escape.

Although he did make a pre-trial statement regarding his role in the offense, Chapa–Garza has not clearly demonstrated acceptance of responsibility. He neither timely withdrew from criminal activity nor surrendered to authorities but was a fugitive for four and one-half years. Chapa–Garza refused to make a statement to the probation officer on advice of counsel, and made no statement to the district court at sentencing. Most significantly, Chapa–Garza's assertion that he was entitled to the adjustment based upon his statements to officers during the airplane ride to San Antonio is inconsistent with his contention that the statements were involuntary.

Chapa–Garza is correct in his contention that exercising his right to trial in order to preserve issues other than the determination of guilt did not automatically preclude him from consideration for the adjustment. *See Maldonado*, 42 F.3d at 912; § 3E1.1, note 2. Although we agree this case arguably fits within the exception as explained in note 2, because of the inherent inconsistency in his assertion that his confession was involuntary for one purpose but voluntary for another, the district court's rejection of the request for an adjustment was not without foundation. Therefore, we will not disturb the district court's determination that Chapa–Garza was not entitled to a two level downward adjustment for acceptance of responsibility.

### III. Conclusion

We find no merit to any of Chapa–Garza's contentions. Therefore, the judgment and sentence are AFFIRMED.