United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 3, 2005**

Charles R. Fulbruge III
Clerk

REVISED MAY 23, 2005
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

04-40354
_____

UNITED STATES OF AMERICA

                    Plaintiff - Appellee

        v.

SCOTT SCHIRMANN CREECH

                    Defendant - Appellant
                _____

        Appeal from the United States District Court
         for the Eastern District of Texas, Sherman
                    4:03-CR-95-1-LED
                _____

Before KING, Chief Judge, and GARZA and BENAVIDES, Circuit

Judges.

BENAVIDES, Circuit Judge:

    Defendant-Appellant Scott Schirmann Creech appeals his

criminal conviction and sentence for four counts of mail fraud in

violation of 18 U.S.C. § 1341, use of a fire to commit a felony

in violation of 18 U.S.C. § 844(h), and conspiracy in violation

of 18 U.S.C. § 371.  Because Creech fails to demonstrate

reversible error either as to his conviction or sentence, we

affirm the judgement of the district court.

### BACKGROUND

    In July of 1998, Creech began operating a night club called

1

Rick's Place located in Denton, Texas.  He leased the premises from Peggy Harvey, the owner of the building. The contents of the building were owned by Rick Reid.  Because of declining liquor sales at Rick's Place between the time Creech began operating the club and August of 2000, Creech had difficulty paying all his bills on time.  Several of his checks had "bounced" due to insufficient funds, his liquor license was revoked, and the Texas Comptroller's office executed several seizures of cash because of overdue taxes.  By August 16, 2000, Creech owed approximately $ 70,000 to various creditors.

In early August, Creech approached a disk jockey or deejay named Reese Haisler, who had at one time worked for Creech but had since left Rick's Place, about the possibility of Haisler returning to Rick's Place as a manager.  Creech also asked Haisler to help remodel the club to improve business.  Haisler accepted Creech's proposal.  Creech later asked Haisler to help him set fire to the bar so that it would look like a fire had accidentally started during the remodeling.  In that way, Creech could collect insurance money to help him with the remodeling process.  Haisler expressed discomfort with the idea but proceeded to help Creech remove items from the bar that Creech did not want burned in the fire.

On Monday, August 14, Creech increased the limits of the insurance policy he had obtained in June of 2000.  He raised the recovery limit on his business personal property from $50,000 to

$150,000. That very day, Creech closed Rick's Place for renovations. Haisler and Creech purchased materials and arranged the club to look like it was being remodeled. That evening, Creech told Haisler that he would set up the fire to go off sometime after Creech and Haisler had left the building. He also said he was going to leave town under the false pretense that he had "family issues" to attend to.

The next day, Creech called his brother's long-time friend, Charles Luff, from Arizona and told him that he had attempted to burn down the club but was not sure that his attempt was successful. He asked Charles to check the building, and if it had not burned down, to set another fire. In exchange, Creech promised to pay $10,000 of the insurance proceeds to Charles. Charles discussed the offer with his twin brother, John, and they agreed to do the job. Creech told the twins that he had left several halogen lamps near some paint, paint thinner, and newspaper. He said he had tried to get the halogen lamps to ignite the newspaper and asked them to re-attempt the same set-up.

At about 4:00 am on August 16, the Luff twins retrieved a key to the club that Haisler, according to instructions from Creech, had left behind the building in which the club was located. They attempted to ignite a fire using the halogen lamps in the club, but they were unsuccessful. Consequently, the Luff twins decided to light the newspaper on fire with cigarette

3

lighters, which proved successful.  A few days after the fire, Creech called his insurance agent and requested that a claim be filed.

Creech was indicted in a seven-count indictment.  Count 1 charged conspiracy to (1) commit arson in violation of 18 U.S.C. § 844(i), (2) use fire to commit a felony in violation of 18 U.S.C. § 844(h), and (3) commit mail fraud in violation of 18 U.S.C. § 1341.  Count 2 charged Creech with arson in violation of 18 U.S.C. §844(I) and aiding and abetting in violation of 18 U.S.C. § 2.  Count 3 charged Creech with using fire to commit a felony (mail fraud) in violation of 18 U.S.C. § 844(h) and aiding and abetting in violation of 18 U.S.C. § 2.  The remaining counts charged Creech with four counts of mail fraud in violation of 18 U.S.C. § 1341 and aiding and abetting in violation of 18 U.S.C. § 2.  The jury convicted on all counts except Count 2 (arson).

**DISCUSSION**

Creech raises thirteen different arguments in support of reversal or re-sentencing.  We treat each in turn.

**I.  Constitutionality of 18 U.S.C. § 844(h)**

First, Creech raises a Commerce Clause challenge to 18 U.S.C. § 844(h), which provides an additional penalty for anyone who "uses fire . . . to commit any felony which may be prosecuted in a court of the United States."  He essentially argues that because the statute does not require a jurisdictional nexus with

interstate commerce to be proved in court, it does not come under Congress's authority to regulate interstate commerce. Because Creech did not raise this challenge below, we review for plain error. *See United States v. Johnson*, 520 U.S. 461, 467–68 (1997).

Creech's argument fails because § 844(h)'s jurisdictional nexus is derived from the underlying felony, which must be one that "may be prosecuted in a court of the United States." By definition, then, a violation of § 844(h) must necessarily be based on an underlying crime that is properly within federal jurisdiction. *Cf. United States v. Pappadopoulos*, 64 F.3d 522, 528 (9th Cir. 1995) (finding that "Section 844(h) does not facially exceed Congress's commerce power because it requires that the underlying felony itself be one that can be prosecuted 'in a court of the United States'"). Indeed, we have previously found a very similar statute, 18 U.S.C. § 924(c)[1], "a valid exercise of Congress' commerce power, even though no specific nexus with interstate commerce is required for conviction." *United States v. Owens*, 996 F.2d 59, 61 (5th Cir. 1993).

Here, the underlying crime was mail fraud in violation of 18 U.S.C. § 1431. Creech does not contend that § 1431 is an invalid exercise of Congress's Commerce Clause power. Consequently, we

---

[1] Section 924(c) provides for an additional penalty for the use, carrying, or possession of a firearm "during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States. . . ."

find that Creech's indictment and conviction under § 844(h) was not unconstitutional.

## II. Reasonable Doubt Instruction

Next, Creech challenges for the first time on appeal the district court's jury instructions regarding reasonable doubt. We review for plain error. *United States v. Daniels*, 252 F.3d 411, 414 (5th Cir. 2001).

Creech argues that the district court's "two-inference" explanation of reasonable doubt, which instructed jurors to acquit the defendant if the evidence equally supported two reasonable theories, one of innocence and one of guilt, was improper. He contends that the instruction over-represented the amount of exculpating evidence that might create a reasonable doubt in jurors' minds. However, the district court's instructions, "taken as a whole, . . .correctly conve[yed] the concept of reasonable doubt to the jury." *Victor v. Nebraska*, 511 U.S. 1, 5 (1994). The district court emphasized, both before and after giving the challenged instruction, the presumption of innocence accorded to all criminal defendants and the heavy burden borne by the government in overcoming that presumption. The district court specifically advised the jury that "[t]he law does not require a defendant to prove his innocence or produce any evidence at all." We find no plain error in the district court's instructions regarding reasonable doubt.

6

## III.  *Pinkerton* Instruction

Creech challenges the district court's jury instructions regarding the *Pinkerton* theory of liability in which a defendant may be found criminally liable for the acts of co-conspirators. He argues that the instruction did not "clearly and unequivocally inform the jury that it had to find every element of the substantive offense under consideration by the jury beyond a reasonable doubt."  We review this claim for plain error because it was not raised below.  *See Johnson*, 520 U.S. at 467-68.

We find no plain error in the district court's instructions. The instructions, which were virtually identical to instructions provided in the Fifth Circuit Criminal Pattern Jury Instructions, correctly stated the law of *Pinkerton* liability.  *See United States v. Thomas*, 348 F.3d 78, 84-85 (5th Cir. 2003) (rejecting appellant's argument that *Pinkerton* charge should not have been given and noting that the *Pinkerton* charge, which followed those outlined in the Fifth Circuit Pattern Jury Instructions, "correctly stated the law").

## IV.  Unanimity Instruction

Creech next claims that the district court violated the Sixth Amendment by failing to *sua sponte* give a specific unanimity instruction as to Counts 3 through 7 requiring the jury to convict only upon agreeing on all elements of the offense under at least one theory of criminal responsibility.  Because

7

Creech did not raise this argument below, we review the instruction for plain error.  *Johnson*, 520 U.S. at 467-68.

The Sixth Amendment requires unanimity as to the elements of the offense.  *Richardson v. United States*, 526 U.S. 813, 817 (1999).  "In the routine case, a general unanimity instruction will ensure that the jury is unanimous on the factual basis for a conviction, even where an indictment alleges numerous factual bases for criminal liability."  *United States v. Holley*, 942 F.2d 916, 925-26 (5th Cir. 1991). However, such an instruction is insufficient if "there exists a genuine risk that the jury is confused or that a conviction may occur as the result of different jurors concluding that a defendant committed different acts."  *Id.* at 926 (citation and quotation marks omitted).

Here, the district court did give a general unanimity instruction requiring the jurors to be unanimous on each count of the indictment and Creech fails to point to any evidence of confusion or disagreement within the jury.  *See United States v. Tucker*, 345 F.3d 320, 336 (5th Cir. 2003) (finding no plain error where appellant "does not corroborate his claim of prejudicial error with a modicum of evidence tending to show that the jury was confused or possessed any difficulty reaching a unanimous verdict").  Accordingly, we find no plain error.

## V.  Sufficiency of Indictment

Creech challenges the sufficiency of Counts 4 through 7 of

the indictment for failure to charge Creech with making a materially false representation, an element of the crime of mail fraud.  *See U.S. v. Bieganowski*, 313 F.3d 264, 285 (5th Cir. 2002) ("Where the government charges a defendant with mail fraud, it must prove the materiality of the fraudulent statement as an element of the offense.").  Because Creech did not raise this challenge below, we review it for plain error. *United States v. Partida*, 385 F.3d 546, 554 (5th Cir. 2004) (applying plain error review where, at trial, defendant failed to raise argument that indictment was insufficient in failing to allege all elements of a crime).

Contrary to Creech's assertions, the indictment's omission of the word "material" in the mail fraud counts does not, by itself, warrant a finding of error.  *See id*.  Rather, "an allegation of fraud in an indictment will be sufficient so long as 'the facts alleged in the indictment warrant an inference that the false statement is material.'" *Id.* (quoting *United States v. McGough*, 510 F.2d 598, 602 (5th Cir. 1975)).

Here, each count complained of incorporated and specifically referred to the allegations made in Count 1, which included allegations that Creech paid someone to burn down Rick's Place and that Creech submitted a claim to his insurance company for losses sustained during the fire. These facts certainly give rise to the inference that a material false representation was made.

*See United States v. Richards*, 204 F.3d 177, 191-93 (5th Cir. 2000)(finding that wire fraud counts that incorporated allegations from conspiracy count involving misrepresentations about the profitability of an investment program sufficiently warranted inference of materiality of misrepresentation) *overruled on other grounds by United States v. Longoria*, 298 F.3d 367, 371 (5th Cir. 2002). We find no plain error in the indictment.

## VI. Sufficiency of the Evidence

Creech next argues that the evidence presented at trial was insufficient to support his mail fraud convictions. Specifically, he claims that the government failed to introduce any evidence to prove that he made a materially false representation, an element of mail fraud.

In evaluating the sufficiency of the evidence, we review the record in the light most favorable to the government and ascertain whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *United States v. Reyes*, 239 F.3d 722, 735 (5th Cir. 2001). "We accept all credibility choices that tend to support the jury's verdict." *United States v. Anderson*, 933 F.2d 1261, 1274 (5th Cir. 1991).

A review of the record shows that a rational juror could have found that Creech made a materially false representation.

10

The record shows that Creech devised and executed a scheme to burn down Rick's Place and then submitted a claim of loss for the damaged property.  While Creech is correct in noting that the "notice of loss/claim" document that Creech submitted to the insurance company was not in evidence, it was nonetheless clear from the evidence that Creech did submit a claim.  Based upon the testimony of Don Morton, an insurance agent at Best Buy Insurance, and Alan Renshaw, an insurance adjustor for Penn America, a rational juror could have found that Creech falsely claimed a legitimate business loss.  We find no reversible error.

## VII.  Duplicity of Indictment

Creech contends that Counts 3 through 7 of the indictment were rendered duplicitous by each count's incorporation of Count 1.

Creech has waived this objection by not raising it below. Objections to the indictment, such as objections on the basis of duplicity, must be raised prior to trial.  Fed. R. Crim. P. 12(b)(3) & (e) (failure to object to indictment before trial constitutes waiver of objection); *United States v. Baytank (Houston), Inc.*, 934 F.2d 599, 608-09 (5th Cir. 1991) ("Even if Baytank's duplicity argument had merit, Baytank has waived it by failing to object below.").

## VIII.  Perjury Enhancement under U.S.S.G. § 3C1.1

Next, Creech challenges the district court's two-level

11

enhancement of his sentence for obstruction of justice under

U.S.S.G. § 3C1.1, arguing that the district court did not make

the required findings before applying the enhancement.  We review

the district court's factual findings in applying the Sentencing

Guidelines for clear error.  *See United States v. Snell*, 152 F.3d

345, 346 (5th Cir. 1998).[2]

---

[2]  Creech's sentence was imposed under the mandatory
sentencing scheme in effect at the time of Creech's trial and
sentencing. During the pendency of this appeal, the Supreme Court
issued its opinion in *United States v. Booker*, 125 S.Ct. 738
(2005), which rendered the U.S. Sentencing Guidelines advisory.
However, the opinion did not invalidate the Guidelines in their
entirety.  Rather, the Supreme Court instructed that district
courts must still consider the Guidelines when sentencing
defendants.  *See Booker*, 125 S. Ct. at 764-65, 767; *United States
v. Mares*, 2005 WL 503715, at *6-7 (5th Cir. 2005).  This
requirement indicates that Booker did not alter the standard of
review we must employ, as part of our overall review of the
sentence, to determine whether the district court properly
interpreted and applied the Guidelines.  *See United States v.
Villegas*, 2005 WL 627963 (5th Cir. Mar. 17, 2005).  Likewise, we
continue to apply the same standard of review to claims of
erroneous fact-finding with respect to the application of
enhancements, i.e., we review for clear error.  *See United States
v. Holmes*, 2005 WL 768942, at *16 (5th Cir. Apr. 6, 2005)
(reviewing for clear error a district court's fact finding made
in relation to a Guidelines enhancement); *see also United States
v. Cacho-Bonilla*, 2005 WL 851713, at *5-7 (1st Cir. Apr. 14,
2005) (reviewing the district court's Guidelines interpretation
and application de novo and its fact-findings in relation to
Guidelines enhancements for clear error); *United States v. Parra*,
2005 WL 703936, at *8-9 (7th Cir. Mar. 29, 2005) (noting that
although the Guidelines are now advisory, there is a strong
interest in ensuring that they are applied properly; applying
pre-Booker clear-error standard to the district court's
fact-finding made in relation to its denial of a downward
adjustment for a lesser role in criminal activity); *United States
v. Doe*, 398 F.3d 1254, 1257 & n.5 (10th Cir. 2005) ("When
reviewing a district court's application of the sentencing
Guidelines, we review legal questions de novo and we review any
factual findings for clear error . . . ."); *United States v.*

Before applying a sentence enhancement resulting from a defendant's trial testimony, "a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same . . . ." *United States v. Dunnigan*, 507 U.S. 87, 95 (1993).  While it is preferable that the district court "address each element of the alleged perjury in a separate and clear finding," the district court's findings are sufficient if "the court makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury." *Id.*

We find that the district court fulfilled its duty.  During the sentencing hearing, the district judge stated, "The Court finds that the Defendant did testify falsely with regard to the conspiracy aspect of the case and, therefore, sustains the Government's objection number one."  Although it did not address each element necessary for a finding of perjury, the court's statement, when read in light of the immediately preceding discussion between the court and both parties regarding the

---

*Hazelwood*, 398 F.3d 792, 795, 800-01 (6th Cir. 2005) (maintaining pre-Booker standards for Guidelines interpretation and enhancement fact-findings); *United States v. Rodriguez*, 398 F.3d 1291, 1296 (11th Cir. 2005) (reviewing enhancement fact findings for clear error); *United States v. Hughes*, 401 F.3d 540, 556-60 (4th Cir. 2005) (reviewing Guidelines interpretation de novo and fact findings in relation to Guidelines enhancements for clear error).

jury's conviction on the conspiracy count regardless of Creech's testimony that he played no role in the conspiracy, encompassed all the factual predicates for such a finding. *See United States v. Morris*, 131 F.3d 1136, 1140 (5th Cir. 1997) (upholding the district court's application of an enhancement for perjury under U.S.S.G. § 3C1.1 where the district court had found that the defendant "was untruthful at trial with respect to material matters in this case").

## IX. Validity of Sentencing Enhancements

Creech also argues that his sentence is improper under *Blakely* and *Booker* because the judge relied on facts not found by a jury beyond a reasonable doubt in calculating his sentence under the U.S. Sentencing Guidelines. *Blakely v. Washington*, --- U.S. ----, 124 S.Ct. 2531 (2004); *United States v. Booker*, --- U.S. ----, 125 S.Ct. 738 (2005). Because he did not raise this issue below, we review for plain error. *See United States v. Mares*, --- F.3d ----, 2005 WL 503715 at *7 (5th Cir. March 4, 2005).

Creech's base offense level for each of Counts 1 (conspiracy) and 4-7 (mail fraud) was calculated at 20. *See* U.S.S.G. § 1B1.2(d). The district court applied a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1 and a two-level enhancement for Creech's role in the conspiracy under U.S.S.G. § 3B1.1(c). Under the Guidelines, the resulting offense

level of 24, when combined with a Criminal History Category I, yielded a range of 51 to 63 months in prison. The district court assessed a sentence of 51 months for each of Counts 1 and 4-7, to run concurrently. Finally, the judge imposed a 10 year sentence for Creech's conviction on Count 3 (using fire to commit a felony), to run consecutive to the 51 months already assessed as required by 18 U.S.C. § 844(h). In total, Creech was sentenced to 171 months imprisonment.

We may only correct any error in Creech's sentence if "there is (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met an appellate court may then exercise its discretion to notice a forfeited error but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at *8 (citations and quotation marks omitted). The first prong of the plain error test is met here. Creech's sentence was enhanced based on facts found by the judge but not by the jury under a mandatory Guidelines regime in violation of the Sixth Amendment. *See id.* The enhancement under U.S.S.G. § 3B1.1(c), for example, required the judge to find that Creech was "an organizer, leader, manager, or supervisor" in the criminal activity.

The error is also plain. *See Johnson v. United States*, 520 U.S. 461, 468(1997) (holding that error is plain for purposes of plain error review as long as the law regarding the issue is

15

settled at the time of appellate consideration).

The third prong of plain error review, which requires the appellant to show that the error affected substantial rights, is not met here. Creech points to the district judge's expressions of sympathy for his situation and his family's plight[3] and the judge's explanations of the mandatory nature of the Guidelines[4]. However, mere sympathy toward either the defendant or the defendant's family is not indicative of a judge's desire to sentence differently under a non-mandatory Guidelines regime. Neither is a sentencing judge's mere summary of sentencing law as it existed at the time sufficient, where, as here, the summary contains no indication that the district court wished to impose a different sentence. Accordingly, Creech has not met his burden of "demonstrating that the result would have likely been different had the judge been sentencing under the *Booker* advisory

---

[3] Specifically, Creech directs our attention to a portion of the sentencing hearing in which the district court rejected Creech's motion for a downward departure. In declining to hear any more statements from Creech's family, the district court stated, "[T]he court is sympathetic, Mr. Creech, to your family's plight and your situation. It's a very sad day when someone with your abilities and your gifts has made such a poor judgment as you did in this incident, which I'm sure at the time that you did it you never foresaw that the consequences could be such as they are. . . ."

[4] The district court explained to Creech, "You . . . elected to go to trial. The jury found you guilty. The Congress of the United States has passed Sentencing Guidelines, which because of the nature of the crime [of which] you were convicted, imposes certain guideline ranges that this Court cannot depart from except in extraordinary circumstances, and your case does not rise to that level."

16

regime rather than the pre-*Booker* mandatory regime," *Mares*, 2005 WL 503715, at *9, and we thus find no plain error in Creech's sentence.

### X. Sentence Stacking Pursuant to 18 U.S.C. § 844(h)

Creech challenges the application of the "stacking" provision of 18 U.S.C. § 844(h) to his sentence. He contends that this "stacking" provision is limited to situations in which the defendant used an explosive, rather than fire, in the commission of a felony. Thus, he argues that because the count in which he was charged with violating § 844(h) only alleged the use of fire, not explosives, his conviction under § 844(h) did not trigger the application of the stacking provision.

Because Creech did not raise this argument below, his claim is reviewed for plain error. *Johnson*, 520 U.S. at 467-68. The text of § 844(h) prohibits the use of "fire or an explosive to commit any felony which may be prosecuted in a court of the United States" and the carrying of an explosive during the commission of a felony, § 844(h)(1) and (2). The subsection provides for an additional sentence, beyond the sentence for the underlying felony, of 10 years imprisonment for a first conviction under the subsection. *Id.* The additional 10 years "imposed under this subsection" shall not "run concurrently with any other term of imprisonment including that imposed for the felony in which the explosive was used or carried."

17

The specific reference to an explosive-related felony does not render the stacking provision applicable only to offenses involving explosives.  Quite to the contrary, the statute's language specifically dictates that the additional term imposed under the section, which applies equally to explosive- *and* fire-related felonies, run consecutively to "any other term of imprisonment."  Moreover, the statute in no way attempts to limit the stacking provision to felonies in which explosives are used but explicitly merely includes such felonies. *Cf. United States v. Grassie*, 237 F.3d 1199, 1214-16 (10th Cir. 2001) (holding that § 844(h)'s stacking provision applies both to fire- and explosive-related felonies); *United States v. Colvin*, 353 F.3d 569, 574 (7th Cir. 2003) (stating, "we agree with the Tenth Circuit that the structure of the statute suggests that Congress intended to treat fires and explosives as interchangeable" in holding that consecutive sentences for violations of § 844(h) does not violate double jeopardy bar); *Sicurella v. United States*, 157 F.3d 177, 178-79 (2nd Cir. 1998) (reaffirming an earlier holding that "§ 844(h)'s requirement of consecutive sentencing does apply to fire-related felonies") .  Accordingly, we find no plain error in the application of § 844(h)'s stacking provision to Creech's sentence.

## XI.  Failure to Charge *Pinkerton* and Aiding and Abetting Theories of Liability

18

Next, Creech argues that because the elements necessary to find him guilty under either an aiding and abetting or *Pinkerton* theory of criminal liability were not set forth in the indictment but nonetheless offered to the jury as theories of criminal liability, the indictment violates the Fifth Amendment's right to "presentment or indictment of a Grand Jury." Because Creech did not raise this argument before the district court, the appropriate standard of review is for plain error. *Partida*, 385 F.3d at 554.

Creech acknowledges that our precedent permits district courts to give juries instructions regarding criminal liability for aiding and abetting and under *Pinkerton* even though those theories were not set forth in the indictment. *See, e.g., Montoya v. Scott,* 65 F.3d 405, 415 (5th Cir. 1995). However, he maintains that the U.S. Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Ring v. Arizona*, 536 U.S. 584 (2002), and *Blakely v.Wasington*, 124 S. Ct. 2531 (2004), call into question that long-standing practice. Nevertheless, we see nothing in those cases addressing the Fifth Amendment argument raised by Creech in this case. Indeed, courts have continued to approve *Pinkerton* and aiding and abetting instructions even without such a theory charged in the indictment. *See, e.g., United States v. Hayes*, 391 F.3d 958, 963 (8th Cir. 2004) ("[T]he District Court was warranted in giving this [*Pinkerton*]

19

instruction, even though co-conspirator liability was not charged in the indictment."); *United States v. Lopez,* 271 F.3d 472, 480 (3rd Cir. 2001) ("[W]e have little difficulty following our sister circuit courts of appeals in determining that a conspiracy need not be charged in order for *Pinkerton's* doctrine to apply.").

## XII.  Double Jeopardy

Finally, Creech argues that his sentences for (1) the use fire during the commission of mail fraud in violation of 18 U.S.C. § 844(h) and (2) mail fraud in violation of 18 U.S.C. § 1341 are two separate punishments for the same offense and therefore violative of double jeopardy jurisprudence.

Creech acknowledges that the U.S. Supreme Court's opinion in *Missouri v. Hunter*, 459 U.S. 359 (1983), demands that this issue be resolved against him.  We must leave to the U.S. Supreme Court the "prerogative of overruling its own decisions."  *Rodriguez de Quijas v. Shearson/American Exp*., Inc., 490 U.S. 477, 484 (1989).

## CONCLUSION

For the foregoing reasons, we AFFIRM Creech's conviction and sentence.

20

EMILIO M. GARZA, Circuit Judge, concurring in part and dissenting in part:

I concur in the judgment and the excellent opinion of Judge Benavides except for footnote 2. Although, I agree with footnote 2 that *Booker* did not invalidate the Guidelines in their entirety and that district courts must still "consider" the Guidelines when sentencing defendants, I cannot agree that this "indicates that *Booker* did not alter the standard of review we must employ when reviewing a court's interpretation and application of the Guidelines." For this proposition the majority cites dicta from *United States v. Villegas*, No. 03-21220, 2005 WL 627963 (5th Cir. Mar. 17, 2005) (a plain error case that did not apply proffered standard of review). *See also Cacho-Bonilla*, 2005 WL 851713, at *6 (citing pre-*Booker* case law and stating, without discussion, that it reviews questions of law under the Guidelines *de novo*); *Doe*, 398 F.3d at 1257 (same); *Hazelwood*, 398 F.3d at 801 (same); and *Hughes*, 401 F.3d at 557 (same).[5] I believe footnote 2 and *Villegas*'s dicta contravene the clear language in

---

[5] These cases, like the majority, seem to find it more comfortable to return to the default position of appellate review; namely, *de novo* review for legal issues and clearly erroneous review for factual issues. *See, e.g., Hazelwood*, 398 F.3d at 801 ("district courts are *required by statute* to consult [the Guidelines], and since a district court's misinterpretation of the Guidelines effectively means that it has not properly consulted the Guidelines, we hold that it was error for the district court to apply the threat of death enhancement in this case") (emphasis in original). Clearly, this position makes perfect sense in a mandatory scheme. It is, however, contrary to an advisory one. The majority, like the court in *Hazelwood*, equates "misinterpretation of the guidelines" with "not properly consulted the guidelines," a total misreading of *Booker*.

21

*Booker.*

Nothing in *Booker* suggests a *de novo* review. Rather, *Booker* instructs courts of appeals to "review sentencing decisions for *unreasonableness*." *Booker*, 125 S. Ct. at 767 (emphasis added). Significantly, *Booker* severed and excised § 3742(e), "the provision . . . [requiring] *de novo* review of departures from the applicable Guidelines range." *Id*. at 763. Thus, I believe we review sentencing decisions for unreasonableness regardless of whether the district court applies the Guidelines and, in cases where the district court does apply the Guidelines, regardless of whether it does so correctly.

*Villegas* and thus the majority draw support for continued *de novo*/clearly erroneous review in part from 18 U.S.C. § 3742(f)(1). This reliance is misplaced. Section 3742(f)(1), while not expressly excised, must now be read in light of the excised § 3742(e), the provision that sets forth standards of review on appeal, including *de novo* review of departures from the applicable Guideline range. Having excised § 3742(e), we no longer review sentences for "violation of law" and "incorrect application,"18 U.S.C. § 3742(e)(1), (2), but rather for unreasonableness. *Booker,* 125 S. Ct. at 767. As Justice Scalia correctly wrote, "[i]t is incomprehensible how or why [§ 3742(f)(1)] can be combined with an obligation upon the appellate court to conduct its own independent evaluation of the 'reasonableness' of a sentence." *Booker*, 125 S. Ct. at 791, n.6 (Scalia, J., dissenting). In his majority opinion, Justice Breyer responds to Justice Scalia's mystification by acknowledging that "some provisions [of the Guidelines] will apply differently from the way Congress had originally expected." *Id*. at 767. The continuing validity of § 3742(f)(1) is in serious doubt. I cannot agree, therefore, that § 3742(f)(1) lends force to a *de novo* standard of review.

By replacing *Booker*'s unreasonableness standard of review with a *de novo* review, the court is essentially reimposing 18 U.S.C. § 3553(b)(1), the severed provision that made the Guidelines mandatory. *Booker* recognizes that *de novo* review is used in conjunction with mandatory systems. *Booker* states, "[i]n 2003, Congress modified the pre-existing text, adding a *de novo* standard of review for departures and inserting cross-references to § 3553(b)(1). In light of today's holding, the reasons for these revisions))to make Guidelines sentencing even more mandatory than it had been))have ceased to be relevant." *Booker*, 125 S. Ct. at 765 (citation omitted). Following *Booker*'s admonition, *de novo* review is inconsistent with an advisory system.

Here, the district court properly interpreted and applied the Guidelines, resulting in a reasonable sentence. *United States v. Mares*, No. 03-21035, 2005 WL 503715, at *7 (5th Cir. Mar. 4, 2005) ("Given the deference due the sentencing judge's discretion under the *Booker/Fanfan* regime, it will be rare for a reviewing court to say . . . a sentence [in which the district court properly applied the Guidelines] is 'unreasonable.'"). This statement from *Mares* is significant, for it explicitly recognizes the proper standard of review. Footnote 2 and the dicta in *Villegas*, however, suggest that the improper application makes the sentence unreasonable *per se*. I agree that to ascertain whether the Guidelines have been applied properly, a *preliminary* step in our review, requires *de novo* review of legal issues and clearly erroneous review of factual issues. However, any determination that either or both determinations are error does not end the inquiry as it did pre-*Booker*. The court must take the additional step to determine whether the sentence decision is unreasonable in light of the factors listed in § 3553(a). *Booker*, 125 S. Ct. at 766 ("Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those

23

factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable.").  In reviewing for reasonableness, we must remember that "the most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410 (2000) (discussing unreasonable applications under AEDPA) (emphasis in original).  Here, the district court's sentence was a correct application of the advisory Guidelines, and I agree that we should hold Creech's sentence reasonable.  Thus, I concur in the judgment and in most of the opinion except for this most important, but erroneous, footnote.