UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

**United States Court of Appeals**
**Fifth Circuit**
**F I L E D**

**October 3, 2006**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 05-10238
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

EDWARD WESLEY ROUSH, JR,

Defendant - Appellant.

Appeal from the United States District Court
For the Northern District of Texas

Before GARZA, PRADO, and OWEN, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Edward Wesley Roush, Jr. ("Roush") appeals the below-guidelines sentence imposed after

his guilty-plea conviction for tax evasion, in violation of 26 U.S.C. § 7201.

I

On February 5, 1998, Roush received income in the form of WasteMasters, Inc. stock for

legal services he had performed during 1997 and 1998. On September 30, 1998, Roush caused

20,191,500 shares to be issued to six business entities, none of which filed tax returns in 1998. In

Roush's 1998 tax return, which he filed in 2002, he declared a taxable income of $11,150. He did not report the receipt of the WasteMasters stock, although he did claim charitable contributions on his 1998 and 1999 tax returns for donating over 4 million shares to John Marshall Law School. The government estimated that the value of the stock received in 1998 was approximately $3.4 million and estimated that the corresponding tax loss was approximately $1,148,409. Roush and others were indicted on 47 counts of wire fraud, securities fraud, money laundering, and conspiracy.[1] Roush was also indicted on one count of tax evasion. When he pleaded guilty to tax evasion, the remainder of the charges were dismissed.

The Probation Officer who prepared the Presentence Report ("PSR") calculated the amount of tax loss for sentencing purposes at $1,148,409, establishing a Base Offense Level of 22. *See* U.S. SENTENCING GUIDELINES § 2T4.1 (2004) (hereinafter U.S.S.G.). After a two-level increase for failure to report income in excess of $10,000 derived from criminal activity, U.S.S.G. § 2T1.1(b)(1), a two-level increase for use of "sophisticated means," U.S.S.G. § 2T1.1(b)(2), and a three-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1(a) & (b), the Probation Officer determined Roush's Total Offense Level was 23, resulting in a sentencing range of 46 to 57 months. Roush objected to the adjustments for failure to report income derived from criminal activity and for use of sophisticated means. He also objected to the calculation of the tax loss. The district court held a sentencing hearing on the question of the appropriate measure of the tax loss. Testimony focused on whether the stock, which was restricted, was valueless by the end of 1998 and what impact that had on the tax loss calculation.

---

[1] The individuals were involved in a scheme to use the threat of litigation to force Wastemaster, Inc. to issue 63 million shares of its stock to the co-conspirators.

The district court ultimately adopted the PSR, specifically noting that it believed that the tax loss calculation in the PSR was correct. However, the district court expressed concerns about the severity of the sentence in light of the fact that the stock was worthless by the end of 1998,[2] stating "that that computation significantly overstates the actual seriousness of the offense here." Rather than using the PSR's $0.5160 per share value for the stock, the district court used the total value Roush had placed on the shares donated to John Marshall Law School in both 1998 and 1999, approximately $1,666,800.[3] The district court stated at sentencing: "But I think in terms of trying to determine a fair sentence and a fair reflection of the gravamen of the offense, I think taking the defendant's own claimed amount of contribution, charitable contribution, is a fair reflection [ ]." Applying the 39.6 percent tax bracket to the total value of the charitable donations to determine the tax loss, the district court determined that the Total Offense Level would be 21, resulting in a sentencing range of 37 to 46. After being reminded of additional filings, the district court reduced the sentence again to 27 months.[4] The district court also required restitution in the amount of $652,000, a special assessment of $100, and two years of supervised release. Roush now appeals, contesting the calculation of the guidelines range contained in the PSR and arguing that the sentence imposed is unreasonable.

II

---

[2] Due to shareholder litigation and actions by the Securities and Exchange Commission ("SEC"), related to the fraud charges that were eventually filed against Roush, the shares were cancelled) ) and thus rendered valueless) ) in mid-December.

[3] By doing so, the district court did not take into account the total number of shares Roush received as income.

[4] The record is unclear as to the substance of these filings. However, neither party objected at the time and no party raises concerns on appeal as to this additional ten-month reduction.

Roush, on appeal, first challenges the district court's acceptance of the PSR's calculation of the tax loss, the use of the 39.6 percent tax bracket, and the application of the enhancements for failure to report income derived from criminal activity and the use of sophisticated means.

A

Tax loss is "the total amount of loss that was the object of the offense." U.S.S.G. § 2T1.1(c)(1); *see also United States v. Clements*, 73 F.3d 1330, 1339 (5th Cir. 1996) (holding that tax loss "means the tax deficiency assessed . . . rather than the amount that the IRS could actually recover"). To calculate the total tax loss for purposes of the PSR, the probation officer used the fair market value ("FMV") of the stock on February 5, 1998, the date that Roush became able to request delivery of the stock (average trading price of $0.5160). This amount was then multiplied by the number of shares (20,191,500). The value of the shares was then discounted by 67 percent.[5] The total actual gross receipts were therefore $3,435,543. The probation officer then subtracted $38,874 of reported gross income to reach the total unreported income of $3,396,669. After subtracting the itemized deductions and using the 39.6 percent tax bracket, the total tax loss was $1,148,409.

Roush argues, as he did at sentencing, that the tax loss used to determine the Base Offense Level in the PSR was incorrect. Roush asserts that the stock should be valued at the close of the taxable year. He then argues that the value of the stock by the end of 1998 was *de minimus* (worth $0.01 per share) if not utterly valueless because of the stock's cancellation. He also argues that even during 1998, the restricted nature of the stock further suppressed the value of the shares. We review

---

[5] This discount was applied because the stock was restricted. Restricted stock, under 17 C.F.R. § 230.144, "may not be sold publicly within two years of its acquisition . . . unless it is first registered with the SEC. . . . Rule 144 does not normally prohibit private placement sales or pledges of such stock, however, although the restrictions of transferability apply also to the transferees or assignees." *McDonald v. C.I.R.*, 764 F.2d 322, 323 n.3 (5th Cir. 1985).

the application of the guidelines *de novo* and factual findings for clear error. *United States v. Clark*, 139 F.3d 485, 490 (5th Cir. 1998) (reviewing the district court's computation of the tax loss).

Under the Internal Revenue Code, when property is transferred in connection with the performance of services, "the excess of (1) the fair market value of such property (determined without regard to any restriction other than a restriction which by its terms will never lapse) at the first time the rights of the person having the beneficial interest in such property are transferable or are not subject to a substantial risk of forfeiture, whichever occurs earlier, over (2) the amount (if any) paid for such property, shall be included in the gross income of the person who performed such services in the first taxable year. . . ." 26 U.S.C. § 83(a). For the purposes of the PSR, the stock was valued on February 5, 1998, the date that Roush was first able to request the issuance of the shares.[6] The Government argues that this is the correct date. In contrast, Roush argues that the stock should be valued at the end of the taxable year.

On February 5, 1998 Roush had the right to request immediate issuance of the stock and thus, constructively received the stock. *See Arnwine v. C.I.R.*, 696 F.2d 1102, 1111 (5th Cir. 1983) ("[A] cash basis taxpayer will be deemed to be in constructive receipt of income when it becomes available to him without substantial restrictions."); *see also Reed v. C.I.R.*, 723 F.2d 138, 142 (1st Cir. 1983) ("[U]nder the constructive receipt doctrine, a taxpayer recognizes taxable income when he has an unqualified, vested right to receive immediate payment."). Typically, stock is valued on the date the shares are issued. *See Champion v. C.I.R.*, 303 F.2d 887, 891 (5th Cir. 1962) (applying the "well-settled rule that stock received as compensation for services rendered to the issuing corporation is

---

[6] Roush did not request issuance of the shares until September 30, 1998. The value of the shares increased during the first part of 1998 and were, in fact, more valuable in September 1998 than they were in Feburary.

taxable as ordinary income of an amount equal to the value of the stock at the date of issuance"); *see also Pledger v. C.I.R.*, 641 F.2d 287, 291 (5th Cir. 1981) ("[T]he value of [defendant's] compensation for purposes of taxation could be determined by reference to the fair market value of the stock on the day of purchase."). Because Roush took constructive receipt of the stock on February 5, that is the correct date on which to establish valuation. *See Wolder v. C.I.R.*, 493 F.2d 608, 612-13 (2d Cir. 1974) (observing that stock is valued on the date of constructive receipt). The Revenue Ruling cited by Roush in support of his argument that the stock should be valued at the end of 1998 is inapposite as it deals with the recission of a contract that voided the transfer of property, thus extinguishing all taxable income. *See* Rev. Rul. 80-58, 1980-1 C.B. 181. Roush's argument that the stock should have been valued at the end of the year fails.

Furthermore, the fact that the stock was restricted at all times during 1998 did not render its fair market value either zero or *de minimus* for the purposes of income calculations. *See McDonald*, 764 F.2d at 325 (discussing how the fair market value of a share of stock is determined without regard to restrictions). This court has analyzed a situation in which a taxpayer purchased corporate stock pursuant to a stock option plan that was subject to certain restrictions on subsequent sale. *Pledger*, 641 F.2d at 288. The sales agreement in *Pledger* stipulated that the restricted stock was worth only 65 percent of its fair market value if sold pursuant to a private placement sale. *Id.* at 289. The taxpayer argued that I.R.C. § 83(a) unconstitutionally allowed Congress to tax in excess of the value for which the stock could be sold. *Id.* In rejecting this argument, we wrote:

> When he purchased the stock, the value of his compensation for purposes of taxation could be determined by reference to the fair market value of the stock on the day of purchase. Although taxpayer argues that the stock subject to the securities restrictions was worth only 65 percent of its fair market value, taxpayer ignores the fact that the stipulation regarding the 65 percent value pertained only to the

discounted value if the stock were sold in another private placement sale. A stipulation as to the value of property if sold under certain circumstances does not necessarily reflect the value of the property in the hands of the current owner. . . . The full value of the stock existed from the moment of purchase; it was only temporarily subject to a diminution in value if exchanged because of the securities restrictions. Despite taxpayer's claim to the contrary, there was no nonexistent value upon which he was taxed.

*Id.* at 291. The court went on to note that the fact that a stock could radically decrease in value after the initial purchase was simply "part of the risk any stockholder encounters when he purchases stock" and concluded that "Congress may constitutionally tax the full fair market value at the time of purchase without regard to the temporary restriction." *Id.*

This analysis is instructive. Although Roush's shares were restricted, he *could* in fact sell them; although a restricted stock cannot be sold publically, it can be sold in a private sale. Indeed, Roush reported a sale of 925,122 of the shares on December 6, 1998, valuing them at approximately $0.59 per share. As this court observed in *Pledger*, the fact that stock is restricted, or even specifically valued for the purposes of private sales at less than the fair market value, does not affect the valuation of the shares for income purposes.[7]

Therefore, the district court did not clearly err when it used the fair market value of the shares on February 5, 1998 to determine the tax loss.

B

Roush argues that the district court erred in placing him in the 39.6 percent tax bracket when determining the total tax loss. He contends that under the Sentencing Guidelines, "the tax loss shall be treated as equal of 28 percent of the unreported gross income . . . unless a more accurate

---

[7] We note that the tax loss analysis ultimately *did* take into account the restricted nature of the stock, discounting its value by 67 percent.

-7-

determination of the tax loss can be made." U.S.S.G. § 2T1.1(c)(1)(A); *see also United States v. Cseplo*, 42 F.3d 360, 364 (5th Cir. 1994). Roush did not object to the use of the 39.6 percent tax bracket during sentencing and we therefore review for plain error. *See United States v. Hoover*, 175, F.3d 564, 567-68 (7th Cir. 1999) (applying the clear error standard of review to the district court's choice of applicable tax bracket where appellant objected below); *see also United States v. McCaskey*, 9 F.3d 368, 376 (5th Cir. 1993) (noting that unobjected to findings of fact are subject to plain error review).

Roush's brief simply asserts that the 39.6 percent tax bracket is incorrect, but offers no reasons why the use of the 39.6 percent tax bracket constitutes plain error. The probation officer applied the 39.6 percent tax bracket when calculating the total tax loss. A PSR bears sufficient indicia of reliability to considered evidence. *United States v. Cothran*, 302 F.3d 279, 286 (5th Cir. 2002). In addition, during the sentencing hearing, the IRS analyst also used the 39.6 percent figure. *See United States v. Thomas*, 12 F.3d 1350, 1372 (5th Cir. 1994) ("Sworn testimony given by a government agent at a sentencing hearing generally bears sufficient indicia of reliability to be considered by the trial judge during sentencing."); *United States v. Aubin*, 87 F.3d 141, 150 (5th Cir. 1996) (upholding the tax loss calculation of IRS investigative agents). Roush has offered no rebuttal evidence that the 39.6 percent tax bracket was incorrect and thus, the district court did not plainly err.

C

Roush challenges the two-level enhancement for use of "sophisticated means." *See* U.S.S.G. § 2T1.1(b)(2) (mandating a two-level increase if the offense involved sophisticated means.). "We review the district court's factual finding that [the defendant] used sophisticated means to impede

discovery of his offense for clear error." *United States v. Clements*, 73 F.3d 1330, 1340 (5th Cir. 1996).

When Roush requested the issuance of the WasteMasters stock, he had the shares issued to six companies, which the PSR characterized as "shell companies." The relevant guidelines commentary notes that "hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts ordinarily indicates sophisticated means." U.S.S.G. § 2T1.1, cmt. n.6. "We must consider the commentary to the Guidelines as authoritative." *United States v. Wise*, 447 F.3d 440, 446 (5th Cir. 2006); U.S.S.G. § 1B1.7 ("Failure to follow such commentary could constitute an incorrect application of the guidelines."). Roush asserts, without further elaboration, that the existence of six pass-through corporate entities does not trigger the two-level adjustment. Because Roush has not demonstrated that the district court was incorrect to follow the guidelines commentary, the district court did not clearly err in imposing a two-level enhancement for use of sophisticated means. *See Clements*, 73 F.3d at 1340 (holding that defendant's use of multiple cashiers checks and his wife's separate bank account to "obscure the link" between the money and himself constituted sophisticated means).

D

Roush challenges the two-level enhancement for failure to report income over $10,000 that resulted from criminal activity, in this case, the fraudulent suit against Wastemasters. *See* U.S.S.G. § 2T1.1(b)(1). Again, we review for clear error. *See United States v. Creech*, 408 F.3d 264, 270 n.2 (5th Cir. 2005).

Roush contends that the government failed to adduce evidence that the source of the income was criminal activity. He does not, however, support this argument. Roush thus fails to rebut the

PSR's finding that the stock was derived from a criminal fraud conspiracy to use a lawsuit to force WasteMasters to issue 63 million shares of its stock to the co-conspirators. As discussed above, information in the PSR that is unrebutted by the defendant bears sufficient indicia of reliability to be considered evidence by the district court. *See Cothran*, 302 F.3d at 286.

Roush also argues for the first time on appeal that this provision violates the Fifth Amendment right against self-incrimination because it penalizes failure to self-report criminal activity. This argument also fails. The point of the enhancement, as discussed in the Application Notes, is to further deterrence, particularly in light of the chronic under-reporting of criminally-derived income. *See* U.S.S.G. § 2T1.1(b)(1) cmt. background. The two-level increase does not itself force an individual to disclose the income, but merely takes into account the source of income when penalizing non-disclosure. *See United States v. Sullivan*, 274 U.S. 259, 263 (1927) (holding that the requirement that income from "illicit traffic in liquor" be disclosed did not violate the Constitution, stating "[i]t would be an extreme if not extravagant application of the Fifth Amendment to say that it authorized a man to refuse to state the amount of his income because it had been made in crime"); *United States v. Johnson*, 577 F.2d 1304, 1310-11 (5th Cir. 1978) (holding that requiring disclosure of income, even income derived from illegal activity, on a tax return does not violate the Fifth Amendment, noting that the individual retains the option of disclosing the income without revealing its source). Thus, the district court did not clearly err in imposing the two-level enhancement for failure to report more than $10,000 derived from criminal activity.

III

In addition to his objections to the PSR, Roush contends that the district court's sentence was unreasonable because it was based on an incorrect tax loss value. To support this argument, he

-10-

reasserts his contention that the stock was valueless by the end of the year. He also argues that it was unreasonable to include the 1999 charitable donations in the calculations because there was no evidence in the record that his 1999 tax returns were falsified.

Here, the calculated guidelines range was 46 to 57 months.[8] Roush received a 27-month sentence. The district court expressed its discomfort with the 46 to 57 month guidelines range based on its understanding of the relative worthlessness of the defendant's stock at the end of the tax year and, thus, imposed a lower sentence, basing its calculation on the reported charitable deductions for gifts of the stock. The district court stated during sentencing:

> It's my view that the government is correct with regard to the calculation of income tax. I am going to vary from the Guidelines because I think under these circumstances, although the tax calculation I believe is correct, given the fact that within the same tax year the stock became essentially worthless, I think that that computation significantly overstates the actual seriousness of the offense here.
> It may be technically a correct calculation of what the Internal Revenue Code calls for, but I think under the circumstances with regard to the seriousness of the criminal offense, that that's just not a fair basis for sentencing. . . .
> I think a more fair representation of the offense would be found by attributing as income the amount of the charitable contributions that was claimed and applying to that a tax rate of 39 percent, which, if done, would result in a two-level decrease of the offense level.

These were the only reasons given by the district court for its decision to deviate downwards.

As mandated by *United States v. Booker*, 543 U.S. 220 (2005), we review a sentence for

---

[8] We note that the 46 to 57 month sentencing range is the district court's original guideline range calculation and does not reflect the filings alluded to by the district court to revise the deviating, non-guideline sentencing range from 37 to 46 months to 27 to 37 months. Because the record fails to reflect the substance of these filings, we cannot evaluate the reduction on the record before us. The basis for this reduction should appear in the record. *See e.g.*, *United States v. Smith*, 440 F.3d 704, 706-07 (5th Cir. 2006) ("Without a properly-calculated Guideline range, we cannot ensure that the disparity between [the defendant's] sentence and the Guideline range is warranted.") Since we are remanding for re-sentencing, any party wishing the court to consider this reduction on subsequent appeal should ensure that these filings are on the record.

unreasonableness. *United States v. Duhon*, 440 F.3d 711, 714 (5th Cir. 2006). Here, the district court deviated from the guidelines, rather than formally departing as permitted by the guidelines. Roush does not argue otherwise. "Before imposing a non-Guideline sentence, a district court must consider the Sentencing Guidelines." *Id.* at 715 (citing *United States v. Smith*, 440 F.3d 704, 707 (5th Cir. 2006), *United States v. Mares*, 402 F.3d 511, 518-19 (5th Cir. 2005)). According to *Duhon*, consideration of the guidelines requires that the district court "calculate the appropriate Guideline range" and "articulate fact-specific reasons" for deviating from the guideline range. *Duhon*, 440 F.3d at 715. In this case, the district court did calculate the appropriate guideline range and did articulate fact-specific reasons for the deviation, namely that the guideline sentence overstates the seriousness of the offense because the stocks were essentially worthless at the end of the tax year.

However, a mere articulation of fact-specific reasons for the deviation is not sufficient to meet the reasonableness standard. Rather, "[t]hose reasons should be 'consistent with the sentencing factors enumerated in section 3553(a).'" *Id*. (citing *Smith*, 440 F.3d at 707). "A non-Guideline sentence unreasonably fails to reflect the statutory sentencing factors where it 1) does not account for a factor that should have received significant weight, 2) gives significant weight to an irrelevant or improper factor, or 3) represents a clear error of judgment in balancing the sentencing factors." *Smith*, 440 F.3d at 707 (applying the framework articulated in *United States v. Haack*, 403 F.3d 997, 1004 (8th Cir. 2005)).

Based on the explanation the district court provided at the sentencing hearing, this non-guideline sentence gives significant weight to an irrelevant or improper factor and therefore fails. The district court deviated from the guideline sentence because it gave significant weight to the year-end value of the stock. But the year-end value of the stock is not relevant to the crime of tax evasion.

-12-

The purpose of the tax evasion statute is to punish the tax loss to the government and not to punish the personal enrichment of the defendant. *See* 18 U.S.C. § 7201 (stating that the object of the tax evasion statute is "[a]ny person who willfully attempts in any manner to evade or defeat any tax imposed by this title or payment thereof"); *see also Spies v. United States*, 317 U.S. 492, 497 (1943) (finding felony tax evasion to be "the capstone of a system of sanctions which singly or in combination were calculated to induce prompt and forthright fulfillment of every duty under the income tax law and to provide a penalty suitable to every degree of delinquency.").

The sentencing guidelines further emphasize this policy goal. U.S.S.G. § 2T1.1 cmt. background ("This guideline relies most heavily on the amount of loss that was the object of the offense. Tax offenses, in and of themselves, are serious offenses; however, a greater tax loss is obviously more harmful to the treasury and more serious than a smaller one with otherwise similar characteristics."). That the purpose of the tax evasion statute is to punish tax evasion and not personal enrichment is true regardless of whether the district court imposes a guideline sentence or a non-guideline sentence.

A district court's determination of the seriousness of the offense under § 3553(a)(2)(A) must be rationally related to the nature of the offense. Without such a limitation, the district court's discretion would become unbounded and would make applying the reasonableness standard on appeal impossible. Because there is no apparent connection between the year-end stock value and the seriousness of the offense, and because the district court did not articulate such a connection, we determine that the district court significantly relied upon an irrelevant factor. Therefore, the district court's non-guideline sentence "fails to advance sufficiently the sentencing objectives enumerated in section 3553(a)(2)(A)--(B)." *Duhon*, 440 F.3d at 720.

As a result of this analysis, we agree with Roush that it was improper for the district court to scale Roush's sentence to his 1999 charitable contributions. After submitting that the actual tax loss was "not a fair basis for sentencing," the district court found that the charitable contributions were a "more fair representation of the offense." Because the district court relied on an improper factor to determine what should be a fair basis for sentencing, namely the year-end stock value, the district court's substitution of the charitable contributions is similarly improper.

In holding that the district court gave significant weight to an irrelevant factor, we do not suggest that a non-guideline sentence for tax evasion must be scaled to the tax loss. To do so would improperly limit the district court's discretion in sentencing. Further, we do not hold that the seriousness of the offense must be limited to a consideration of the tax loss. A district court may find that other factors enumerated in § 3553(a) justify a deviation, either upward or downward, from the sentencing range. However, the justifications for any deviation must be reasonably tied to the factors enumerated in § 3553(a). In this case, the district court's reliance on the year-end stock value to mitigate the seriousness of the offense, without elaboration justifying that reliance, fails to meet this standard.

Because the district court offered no justification reasonably related to the factors under § 3553(a) for its decision to deviate from the guidelines, we hold that the sentence is unreasonable. Although we ultimately agree with Roush as to the unreasonableness of his sentence, we disagree that, under the guidelines, the value of the stock should be assessed at the end of the year. Accordingly, we VACATE Roush's sentence and REMAND to the district court for re-sentencing

not inconsistent with this opinion.[9]

---

[9]     Roush raises three further arguments as to his sentence. First he argues that he was entitled to notice of the district court's decision to deviate from the guidelines. Second he argues that the amount of restitution ordered by the district court was improperly based on the district court's recalculation of the tax loss. Third he argues that his enhancements were not proven beyond a reasonable doubt. He acknowledges, however, that this argument is foreclosed, *see United States v. Mares*, 402 F.3d 511 (5th Cir. 2005), and he has raised it only to preserve it for further review. Because we vacate and remand on other grounds, we need not reach these arguments except to note that the district court failed to state any underlying reason for the $652,000 in restitution, an amount considerably lower than the approximate $1,666,800 value he placed on the stock. See Part I, *supra*.